IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

JAMES LAKE, and FETCH INDUSTRIES, LLC,

          Plaintiffs,

v.

PRESTON A. SCHEIDT, GREEN GOAT LABS, LLC, FURLONG FAMILY, LLC, KEYSTONE REAL ESTATE, JOHN DOES (1-6), and XYZ CORPORATIONS (1-6),

          Defendants.

Case No:  6:20-cv-00850-MK

**OPINION AND ORDER**

_____

AIKEN, District Judge.

      This case arises out of disputes between hemp processing companies and their landlord.  Plaintiffs James Lake, appearing *pro se*, and Fetch Industries, LLC bring this action against defendants Preston A. Scheidt, Green Goat Labs, LLC, Furlong Family, LLC, Keystone Real Estate, John Does (1-6), And XYZ Corporations (1-6), alleging over 20 claims for relief including, *inter alia*, conversion, breach of contract, elder abuse, and libel.  Plaintiffs allege that they are being wrongfully evicted from

Page 1 – ORDER

their currently leased premises by the Furlong and Keystone defendants, and that certain property belonging to them and a customer is at risk of damage, conversion, or destruction by defendant Scheidt.  Plaintiffs now move for the issuance of a temporary restraining order ("TRO") (doc. 2) to halt eviction proceedings, prevent the laying waste of chattels, and on the removal from 136 42nd Street building in Springfield, Oregon ("the Property") of only the specific property owned by plaintiff and his customer and any equipment currently in dispute in this action against defendants.  For the reasons below, the motion is GRANTED.

## LEGAL STANDARD

The same general legal standards govern temporary restraining orders and preliminary injunctions.  Fed. R. Civ. P. 65; *New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1347 n.2 (1977).   A plaintiff seeking such relief must establish (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in the plaintiffs favor; and (4) a preliminary injunction is in the public interest.  *Winter v. Nat'l Resources Def Council, 555 U.S. 7, 21 (2008).*  A court may not enter a preliminary injunction without first affording the adverse party notice and an opportunity to be heard.  Fed. R. Civ. P. 65(1)(2); *People of State of Cal. ex rel. Van De Kamp v. Tahoe Regional Planning Agency*, 766 F.2d 1319, 1322 (9th Cir. 1985).  By contrast, an emergency TRO may be entered without notice.  *See* Fed R. Civ. P. 65(b)(l)(A) (restricting availability of *ex parte* temporary restraining orders to situations in which "immediate and irreparable injury, loss, or damage will result to the movant

before the adverse party can be heard in opposition.")  The court's decision on a motion

for a preliminary injunction is not a ruling on the merits.  *See Sierra On-Line, Inc. v.*

*Phoenix Software, Inc.*, 739 F.2d 1415, 1422 (9th Cir. 1984).

## DISCUSSION

This diversity case arises out of a joint venture agreement between plaintiff

Lake, a resident of Florida, and defendant Scheidt, a resident of Oregon.  Plaintiff is

the managing member and chief operating officer of Fetch Industries, Nevada limited

liability company.  Fetch Industries is a hemp processing company, and plaintiff Lake

alleges that he lent the LLC money and that the company's equipment was given to

him as partial payment for the loan.  Plaintiff is now the sole member of Fetch

Industries.

Relevant to this motion, plaintiff and defendant Scheidt entered into Joint

Venture agreement to process hemp biomass into oil under Fetch Industries license.

Plaintiff Lake on behalf of Fetch Industries executed a lease with Furlong Family,

LLC on December 18, 2018, in which those defendants agreed to lease to plaintiff

6,200 square feet of building and 28,700 SF of associated land area situated at 136

42nd Street, Springfield, Oregon.  The original lease was set to run through December

31, 2019.  It also contained a provision which gave plaintiff an option to purchase the

property from the Furlong defendants.  Plaintiff could renew the lease, provided it

was not then in default, for  one successive term of five years according to the

following terms:

> (a) The renewal term shall commence on the date following the date of
> termination of the preceding term.

(b) The option must be exercised by written notice to the Lessor not less than SIXTY (60) days prior to the last day of the expiring term. The giving of such notice shall be sufficient to make the lease binding for the renewal term without further act of the parties who shall then be bound to take the steps required in connection with the determination of rent as specified below.

(c) The basi rental rate of the lease for any renewal term shall be the greater of (i) the ending rental rate of the preceding term, (ii) a reasonable rental rate for the suing term, as mutually agreed by the parties, or (iii) as described the in Section 2.1 below.

Pl's Compl. Ex. 21

In event of a default on the agreement, the lease provides:

15.2 Default in Other Covenants

Failure of Lessee to comply with any term or condition, to fulfill any obligation of the lease (other than the payment of rend or other charges) within TWENTY (20) days after written notice by Lessor specifying the nature of the default with reasonable particularity. If the default is of such a nature that it cannot be completely remedied with the TWENTY (20) day period, this provision shall be complied with if Lessee begins correction of the default within the TWENTY (20) day period, and thereafter proceeds with reasonable diligence and in good faith to effect the remedy as soon as practicable.

*Id.*

In late October 2019, plaintiff and the Furlong defendants amended the 2018 lease to provide that "[a]ll provisions of the current lease will remain exactly the same however the termination date will move from December 31, 2019 to April 1st, 2020."

*Id*. Ex. 20.

On January 31, 2020, plaintiff allegedly emailed the Furlong defendants with a subject line of "60 day notice." The email thanks the Furlong defendants for allowing a 60-day extension on the lease, presumably to April 1, 2020. He references

that under the lease, he is required to give 60 days' notice of a firm commitment to renew. However, he wrote that he needed those 60 days to have a "catch 22." *Id.* Ex. 21. Plaintiff clarified that "[a]s a result we need to say we can only extend or end the lease 60 days out verses a firm commitment to buy this early." *Id.* Plaintiff noted that they could not confirm that they would buy the property at that time. He concluded by writing, "[w]e look forward to discussing this further to final everything you require to come to a meeting of the minds." *Id.*

On April 2, 2020, plaintiff alleges, though he has produced no written contract, that he met with the Furlong defendants and reached an agreement with them which extended the lease for a year until April 1st, 2021, extended plaintiff's option to buy the property, and structured a participation by The Furlong Family Trust in his business at a $125,000.00 value.

From 2018 to this time, it appears that plaintiff and defendant Scheidt's business relationship deteriorated considerably. Defendant Scheidt established his own hemp processing company, defendant Green Goat Labs, LLC. Scheidt allegedly made offers to buy plaintiff out of the joint venture during this period as well. The parties eventually began working as separate entities sharing workspace.

One issue of contention between the former business partners was plaintiff entering into an agreement with a third party, Lance Kreck. The agreement allowed Kreck to store unprocessed hemp biomass at the property. Originally, there was an option that the hemp could be processed that the property or if it was processed elsewhere then Kreck would pay for the storage of the property. Payment would be

made out of the proceeds of the sale of the processed hemp oil. Defendant Scheidt objected to Kreck having access to the property, and the parties eventually reached an agreement to resolve Kreck's access to the building. It appears that Kreck never processed some or all of his hemp biomass, and the hemp has remained at the property ever since.

Plaintiff alleges that he continued to pay rent for both April and May 2020 after April 1, 2020. On May 11, 2020, plaintiff was sent a letter from Steve Neilson who works for Keystone Real Estate ("Keystone"). While the Furlong defendants own the property, Keystone is the managing landlord. Neilson informed plaintiff that the company had found him in breach of the lease agreement and was choosing not to renew the lease. Specifically, he outlined that the lease prohibited sub-leasing on the property and plaintiff had two subleases at the time, presumably Kreck and Green Goat Labs. He further noted that plaintiff had never giving any proof of insurance listing Keystone as an interest party, also required by the agreement. Finally, Neilson pointed out that plaintiff had failed to provide a letter 60 days before the end of the lease as notice that he intended to renew the lease. Due to the violations, Keystone informed him that his lease would end May 31, 2020 and that the subtenant, again presumable Scheidt and Green Goat Labs, would take over the lease on June 1, 2020.

Plaintiff responded the next day, arguing that he had renewed the lease with Furlong defendants through April 2021 and refuted the violations. Neilson responded on May 13, 2020 by noting that the Furlong Family were the owners of the

property while Keystone was the landlord.  Neilson stated that the only agreement signed by the Furlongs extended the lease from January 31, 2020 to April 1, 2020, not April 2021.  Plaintiff responded on May 21, 2020, that he did not concede that he was in default to due breaching any covenants of the agreement, but he also noted, that per the terms of the lease, "I have either remedied or are [sic] in the process of completing the remedies to what you have claimed are defaults." Pl's Ex 26.  Neilson responded the same day that he had been informed that plaintiff had tried to change the locks on the tenants to which he was wrongfully subleasing and reiterating that his lease would not be renewed.

On May 28, 2020, plaintiffs filed the present suit.  The following day plaintiff Lake filed the present motion.  Due to miscommunication, the Court did not learn until Monday June 1, 2020 that plaintiff had paid the required filing fee on May 29, 2020.

Turning to the *Winter* factors, the Court finds first that plaintiff has made an adequate initial showing of irreparable harm.  Although plaintiff need not show actual harm at the preliminary injunction stage, plaintiff "must establish that irreparable harm is likely, not just possible." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011).  The likely harm must be supported by a "clear showing." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). Speculative injury is insufficient.  *Goldie's Bookstore, Inc. v. Superior Court*, 739 F.2d 466, 472 (9th Cir.1984).

Plaintiff argues that defendant Scheidt has threatened to destroy Kreck's hemp biomass if it is not removed from the property. Plaintiff also fears that Scheidt and other defendants will convert or destroy other property he claims own located at the Springfield property in the eviction process. Plaintiff argues that the value of Kreck's biomass is invaluable because in the time that it has been stored at the property it has neither been weighed or processed. He also argues the he will suffer irreparable harm not only from lost revenue, but also due to loss of customers and his reputation in the industry if the biomass and property are destroyed.

Intangible injuries such as loss of goodwill and prospective customers can qualify as irreparable harm. *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush and Co.*, 240 F.3d 832, 841 (9th Cir.2001) ("Evidence of threatened loss of prospective customers or goodwill certainly supports a finding of the possibility of irreparable harm"); *Rent–A–Center, Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir.1991) (damage to reputation or customer relationships may support a finding of irreparable harm because it is difficult to quantify).

Given plaintiff's allegations that defendant Schiedt has sent messages which threaten to destroy the biomass if it was not removed as demanded, he has provided evidence of more than speculative injury at this point. Further, because he has adequately alleged loss of goodwill and customer relationships he has satisfied, at the present stage, this prong of the inquiry.

Turning to whether plaintiff has shown a likelihood of success on the merits, the Court finds that this factor weighs slightly in favor of granting the requested

relief.  Plaintiff has brought a multitude of claims against defendants, and, based solely on the allegations of the complaint, it appears that some have merit.

The Court has reservations about some aspects of this case, including whether plaintiff Lake or Fetch Industries is the real party in interest to certain claims.  For example, the lease agreement in question is between the Furlong defendants and Fetch Industries. It is unclear whether plaintiff Lake has standing to bring any claims on behalf of Fetch Industries.  Fetch Industries, as an LLC, cannot appear unrepresented in this action, nor can Lake bring an action on its behalf even though he is the sole member as it is a separate legal entity.[1]  *See Barker v. BSI Fin.*, 2019 WL 4605569, at *4 (D. Or. Sept. 23, 2019) (*citing* Simon v. *Hartford Life, Inc.*, 546 F.3d 661, 664 (9th Cir. 2008) ("It is well established that the privilege to represent oneself *pro se* provided by [28 U.S.C.] § 1654 is personal to the litigant and does not extend to other parties or entities.")).

That said, plaintiff has alleged that the lease was renewed by an agreement between himself and the Furlong defendants through April 2021.  He has also alleged that he sought to remedy any defaults in accord with the lease agreement.  He has also presented arguments and evidence about the disputed ownership of certain property he fears might be lost in the eviction process.

The Court also notes that a plaintiff may obtain a preliminary injunction or, likewise, a TRO, by demonstrating that "serious questions are raised and the balance

---

[1] Plaintiff is an attorney with membership to the California State Bar.  Plaintiff is not admitted to the Federal Bar in the District of Oregon.

of hardships tips sharply in [his] favor." *Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1200–01 (9th Cir. 1980) (citation omitted). "Serious questions" are those that cannot be resolved at a hearing and "to which the court perceives a need to preserve the status quo." *Gilder v. PGA Tour, Inc.*, 936 F.2d 417, 422 (9th Cir. 1991) (citation omitted). "Serious questions" need not promise a certainty or probability of success but must involve a "fair chance of success on the merits." *Id.* (citation omitted).

The Court finds that plaintiff has raised serious questions going to the merits of his claims. Further, given the alleged facts that Scheidt and Green Goat Labs have been operating out of the premises for several months prior to the new lease with plaintiff's alleged equipment and Kreck's biomass already stored there, the Court finds that entering the relief requested would merely preserve the status quo while defendants are given an opportunity to respond more fully to plaintiff's arguments. Thus, at this point, the balance of equities tips sharply in plaintiff's favor, which warrants granting the requested relief.

The Court finds that the public interest factor is neutral here.

## CONCLUSION

For the reasons set forth above, plaintiffs' motion for a temporary restraining order (doc. 2) is GRANTED. The Clerk shall coordinate with the parties to schedule a hearing on whether a preliminary injunction should issue. The Court shall enter a separate scheduling order setting a date for the preliminary injunction hearing not later than 14 days from the date of this order.

Accordingly, it is ordered that all property belonging to plaintiff, including machinery and other chattel, in dispute and hemp raw material belonging to plaintiff's customer, stored at 136 42nd Street, Springfield, Oregon, remain at those premises, that the eviction process be halted, no that no party shall lay waste to chattel there until further order of this Court.

It is so ORDERED.

DATED this  2nd  day of June 2020.


_____
/s/Ann Aiken
ANN AIKEN
U.S. DISTRICT JUDGE